UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:22-cr-324-TPB-JSS

MOHAMED NIDAL JABER

**UNITED STATES' MOTION TO REVOKE THE DEFENDANT'S PRETRIAL RELEASE**

The United States of America, pursuant to 18 U.S.C. §§ 3148, 3142 (f)(1)(A), (B), and (C), and 3142 (e)(2)(A) and (B), moves the Court to revoke the defendant's pretrial release and detain him based on the following:

I. PROCEDURAL HISTORY

On September 14, 2022, the grand jury indicted the defendant in a one count indictment charging him with being a felon in possession of a firearm. Doc. 1.[1] He was arrested in the Southern District of Texas on October 5, 2022, and released on conditions that same day. Docs. 6-1 and 6-6. One of the defendant's conditions of release was that he "must not violate federal, state, or local law while on release." *Id*. He is being supervised in the Northern District of California.

Another Middle District of Florida grand jury indicted the defendant and five co-defendants with charges ranging from racketeering conspiracy, conspiracy to possess with intent to distribute 1000 kg or more of marijuana, conspiracy to commit

---

[1] The grand jury charged the defendant in a superseding indictment on December 19, 2023, with an additional count of felon in possession of a firearm. Doc. 97.

robbery, and bank fraud on June 20, 2024.[2] Most of the acts that provide the basis for those charges predate the defendant's arrest in the instant indictment.

On June 25, 2024, Northern District of California United States Magistrate Judge Laurel Beeler signed a search warrant for the defendant's California residence. Agents simultaneously executed the search warrant and arrested the defendant on the new indictment on June 26, 2024. Upon execution of the search warrant, investigators discovered 74 Totes containers with 300 pounds of marijuana inside, approximately $7,000 in cash, what appeared to be drug ledgers, and high-end jewelry.

The defendant made his first appearance on the racketeering indictment in the Northern District of California on June 27, 2024. The magistrate presiding over his detention has yet to issue a ruling. A final hearing is set for July 3, 2024, at 10:30 a.m. PST. If the defendant is released from custody, the United States will request a stay and seek a review and appeal from United States District Court Judge William F. Jung.

II.     **MEMORANDUM OF LAW**

A person who has been released pursuant to 18 U.S.C. § 3142, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court. 18 U.S.C. § 3148(a). Where a defendant is charged with violating the condition of release that such person not

---

[2] *United States v. Christian Andujar et al.*, 8:24-cr-241-WFJ-SPF.

commit a Federal, State, or local crime during the period of release, the judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

    (1) finds that there is—

        (A)    probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

        (B)    clear and convincing evidence that the person has violated any other condition of release; and

    (2) finds that—

        (A)    based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

        (B)    the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(a).

Under the Bail Reform Act, this Court must order the defendant's detention if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure [his] appearance ... as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the burden of proving (1) by a preponderance of the evidence that no condition or conditions will reasonably ensure his appearance or (2) by clear and convincing evidence that no condition or conditions will ensure the safety of any other person and the community. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990). The

3

government need only prove either flight risk or danger to the community to justify pretrial detention. *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988).

The "dangerousness" necessary to justify pretrial detention "has a much broader construction than might be commonly understood in everyday parlance." *Id.* at 487, n.2. It extends to non-physical harms, including "the danger that the defendant might engage in criminal activity to the detriment of the community." *Id*. The risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.' *Id*. Furthermore, mandatory minimum sentences create a substantial incentive for a defendant to flee. *Id*. at 489.

According to 18 U.S.C. § 3142(g), to determine whether there are conditions of release that will reasonably assure the appearance of a defendant, and safety of the community, the Court must consider various factors, to include: (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the risk of danger to any person or the community that the defendant would present if released.

In this case, all these factors weight strongly in favor of detention. The defendant is both a flight risk and danger to the community.

### *NATURE AND CIRCUMSTANCES OF THE OFFENSE*

The nature and circumstances of this offense are very serious and weigh in favor of detaining the defendant. The defendant is charged in the instant case with

being a felon in possession of two firearms and ammunition. He faces a maximum sentence of 10 years' imprisonment on each count. The Court should also consider that the defendant is facing a 10-year mandatory minimum sentence on Count Two of the racketeering indictment.

### *THE WEIGHT OF THE EVIDENCE*

The weight of the evidence in this case is strong and weighs in favor of detaining the defendant. On April 17, 2023, a friend of the defendant's was shot and killed by a rival gang member in the parking lot of a local strip club, Scores Gentlemen's Club. The defendant's vehicle was impounded for evidence because the vehicle received rounds of gunfire during the shootout in the parking lot. After the defendant consented to a search of his vehicle, investigators discovered two firearms and a .40 caliber bullet casing inside of the vehicle. The defendant could not be excluded from DNA found on both guns.

Likewise, the weight of the evidence in the most recent racketeering indictment is strong. The evidence against the defendants in that case includes text messages, social media posts and messages, business records, GPS tracker data, ballistics comparison, and witness and cooperator testimony. The investigation revealed that the defendant is an associate of a criminal street gang in Hillsborough County, Alexander Park or "AP." Members of AP used GPS tracker devices to stalk and surveille targets of violent crimes including shootings. Members of this group also committed commercial burglaries and residential robberies, usually armed with

firearms, to steal hundreds of pounds of marijuana throughout Oregon, California, and Florida.

For example, law enforcement recovered a text exchange between the defendant and Christian Andujar Rivera, a co-defendant in the RICO indictment from April 2021 where Andujar Rivera sent the name and date of birth of J.S. to find out whether J.S. had any vehicles in J.S.'s name. A few months prior to the text between Andujar Rivera and the defendant, J.S. and her boyfriend, a Latin King and rival to Andujar Rivera, were shot in a parking garage by unknown assailants. The defendant responded to Andujar Rivera's text that he would check on the information. He later responded to Andujar Rivera that he needed J.S.'s driver's license number to get the information. By that point, Andujar Rivera revealed to the defendant that he had gotten the information on J.S.'s vehicle from another source. A few months later, J.S. found a GPS tracking device on her vehicle the day after her boyfriend was again shot and almost died. GPS tracker data records show that trackers paid for by Andujar Rivera and Julissa Collazo, another co-defendant in the RICO indictment, were present in the area of J.S.'s residences in the weeks leading up to that near-fatal shooting of her boyfriend in July 2021.

Additionally, agents were provided information that the defendant and other members of AP were involved in an armed home invasion robbery in California in 2021. During that robbery, the defendant, Andujar-Rivera, Irving Diego Bruzon, a co-defendant in the RICO case, and others broke into an occupied residence to steal marijuana from the residents at that location. During that robbery, a female resident

put up a fight and the defendant held a fork to her throat to gain compliance from her. The group was able to steal approximately 100 pounds of marijuana from the residence.

Furthermore, evidence uncovered in this investigation shows that, in January 2022, the defendant and other AP members, including Andujar Rivera, Bruzon, and Xavier Gardner used GPS trackers paid for by Andujar Rivera to track two individuals in the Southern District of Florida. Evidence produced by this investigation indicates that the defendants attempted to break into the home of the two individuals. When that did not work, the defendants went to a business owned by the two individuals and stole approximately $50,000 worth of merchandise and a few pounds of marijuana. Two GPS trackers were later discovered on the individuals' vehicles.

Agents recovered a video from Andujar Rivera's phone that was taken at the defendant's residence in Hillsborough County shortly after the burglary in south Florida. The video showed the defendant, Bruzon, Gardner, and others distributing items, including shoes, clothes, and marijuana stolen from the store. In May 2022, agents served a search warrant at a residence in Hillsborough County that the defendant had recently vacated. They discovered several dozen spent casings, multiple projectiles, and several items taken from the south Florida business in January 2022. Additionally, in July 2022, Andujar Rivera allowed law enforcement to search his residence in Hillsborough County. They discovered several firearms, a

bullet proof vest, and shoes taken from the business in the Southern District of Florida.

Six days later, after the firearms were discovered in the defendant's vehicle, on April 23, 2022, A.H., was murdered in broad daylight in the parking lot of strip mall in Hillsborough County. A surveillance video recording of the murder depicts a gray Jeep Grand Cherokee that pulled up to the victim's car, a Honda Accord. An individual in all black wearing a mask and gloves exited the Grand Cherokee, looked inside of the passenger side window, and began to shoot into the car. Bullets passing through the passenger window and exiting the driver's side window are visible in the video. The video shows that two other individuals, dressed in black with masks, gloves, and long guns, also exited the Grand Cherokee and began shooting at the victim's car.

HCSO investigators responded to the scene where A.H. was dead inside of the Honda. A. H. was a member of Latin Kings. According to the Hillsborough County Medical Examiner's Office, A.H. was shot 17 times. Approximately 70 .40 caliber and .223 caliber casings were recovered from the parking lot. One of the .40 caliber casings recovered from the parking lot was matched through National Integrated Ballistic Information Network (NIBIN) [3] with the .40 caliber casing recovered from the defendant's vehicle the night of the Scores shooting. A Florida Department of

---

[3] NIBIN correlates these images against the NIBIN database and produces potential investigative leads if similar ballistic evidence exists within the database. Ballistic evidence within the NIBIN database is primarily derived from casings recovered from criminal activity or firearms recovered by law enforcement officers.

Law Enforcement analyst opined that the .40 caliber casing found in the defendant's vehicle and one of the .40 caliber casings found at the scene of A.H.'s murder were fired from the same firearm.

### DEFENDANT'S HISTORY AND CHARACTERISTICS

The defendant's history and characteristics weigh in favor of detention. He has prior felony convictions for grand theft, conspiracy to commit racketeering, burglary smash and grab, and grand theft smash and grab. He also has a conviction for failure to appear.

In the instant case and new racketeering case, the defendant is being accused of very serious and violent offenses. It is important to note that the conduct the grand jury has charged the defendant and his co-defendants in the racketeering case is very similar to the burglary smash and grab racketeering conspiracy that he has been previously convicted.

### RISK OF DANGER IF RELEASED

The defendant is a danger to the community. He is currently on pretrial release after being indicted in the Middle District of Florida for being a felon in possession of firearms and ammunition. During the arrest on the racketeering charges in the Northern District of California, investigators discovered approximately 300 pounds of marijuana, drug paraphernalia, drug ledgers, high-end jewelry, and approximately $6,000 cash in the defendant's residence. *See* Exhibits 1, 2, and 3.

The defendant continues to violate the law by trafficking in large amounts of controlled substances even while on the Court's supervision.

## III. CONCLUSION

Based on the foregoing, the United States requests that the defendant's pretrial release be revoked, and the Court issue a warrant for the defendant's arrest.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ *Shauna S. Hale*
Shauna S. Hale
Assistant United States Attorney
Florida Bar No. 881481
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: shauna.hale@usdoj.gov

| | |
|---|---|
| U.S. v. Mohamed Nidal Jaber | Case No. 8:22-cr-324-TPB-JSS |

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

David Seltzer, Esq.

/s/ *Shauna S. Hale*
Shauna S. Hale
Assistant United States Attorney
Florida Bar No. 881481
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: shauna.hale@usdoj.gov